1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EVELYN DAVIS ALFRED,                    No.  2:24-CV-03317-DC-SCR

12              Plaintiff,

13         v.                                ORDER GRANTING TEMPORARY
                                             RESTRAINING ORDER
14   CITY OF VALLEJO,
                                             (Doc. No. 3)
15              Defendant.

16

17         Plaintiff Evelyn Davis Alfred applied ex parte for a temporary restraining order and

18   preliminary injunction barring Defendant City of Vallejo ("Defendant City") from evicting her

19   from her tarp shelter in a residential neighborhood in Vallejo, California. (Doc. No. 3.) For the

20   reasons set forth below, the ex parte application for temporary restraining order is **granted, and a**

21   **hearing on the request for preliminary injunction is set for 1:30 p.m. on December 13, 2024.**

22                                **BACKGROUND**

23         According to Plaintiff's declaration submitted in support of her ex parte application,

24   Plaintiff has been unhoused for several decades. (Doc. No. 1 at 23.) She has lived at 710 Mare

25   Island Way, Vallejo, CA 94590, for the last 18 months. (*Id.*) Plaintiff asserts she is chronically

26   disabled and suffers from mental and physical health issues. (*Id.*)

27         On October 29, 2024, Plaintiff received a notice informing her that she would be evicted

28   by Defendant City on November 1, 2024. (*Id.* at 24.) On the same day, Plaintiff requested

                                         1

1    Defendant City provide her reasonable accommodation under Title II of the Americans with

2    Disabilities Act ("ADA") for an additional 30 days to pack her belongings and for assistance with

3    moving. (*Id.* at 27, 74–75.)

4         Plaintiff filed an action in this court on October 31, 2024, *Alfred v. City of Vallejo, et al.*,

5    No. 2:24-cv-02993-DJC-AC, containing a substantially similar complaint and ex parte application

6    for temporary restraining order and preliminary injunction. On November 1, 2024, the court

7    ordered Defendant City, Vallejo Police Department, and Dale Matsuoka to inform the court

8    whether the eviction notice posted on October 29, 2024, at 710 Mare Island with a scheduled

9    enforcement date of 7:00 a.m. on November 1, 2024, had been enforced, and whether Plaintiff's

10   written request for a reasonable accommodation had been granted or denied by Defendant City.

11   Defendant City filed a status report the same day reporting it had granted Plaintiff's request for a

12   reasonable accommodation and would delay removal of her encampment until December 2, 2024.

13   On November 27, 2024, Plaintiff filed the instant action against Defendant City and applied ex

14   parte for a temporary restraining order and preliminary injunction. (Doc. Nos. 1, 3.)

15                                   **LEGAL STANDARD**

16        The purpose of a temporary restraining order is to preserve the status quo and to prevent

17   irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose*

18   *Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). In determining whether to issue a

19   temporary restraining order, a court relies on the factors that guide the evaluation of a request for

20   preliminary injunctive relief: whether the moving party "is likely to succeed on the merits, . . .

21   likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities

22   tips in [its] favor, and . . . an injunction is in the public interest." *Winter v. Natural Res. Def.*

23   *Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*,

24   240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the analysis for temporary restraining orders and

25   preliminary injunctions is "substantially identical").

26        Courts within this circuit may consider a request for a temporary restraining order using a

27   "sliding scale" test in which "a stronger showing of one element may offset a weaker showing of

28   another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[W]hen

                                            2

1   plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of

2   irreparable injury, and the injunction is in the public interest, they need only show 'serious

3   questions' on the merits." *Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th

4   852, 859 (9th Cir. 2022) (citing *Alliance for the Wild Rockies*, 632 F.3d at 1135).

5         The Eastern District of California's local rules impose specific requirements on those who

6   request a temporary restraining order. *See* L.R. 231. Among other things, these rules require

7   "actual notice to the affected party and/or counsel" except in "the most extraordinary of

8   circumstances." L.R. 231(a). "Appropriate notice would inform the affected party and/or counsel

9   of the intention to seek a temporary restraining order, the date and time for hearing to be

10   requested of the [c]ourt, and the nature of the relief to be requested." *Id*. The moving party must

11   also confirm it has complied with local rules by filing the checklist available on the court's

12   website.

13         A court may issue a temporary restraining order "without written or oral notice to the

14   adverse party" only if

15           (A) specific facts in an affidavit or a verified complaint clearly show
        that immediate and irreparable injury, loss, or damage will result to
16           the movant before the adverse party can be heard in opposition; and

17           (B) the movant's attorney certifies in writing any efforts made to give
        notice and the reasons why it should not be required.
18

19   Fed. R. Civ. P. 65(b)(1). "Every temporary restraining order issued without notice must state the

20   date and hour it was issued; describe the injury and state why it is irreparable; state why the order

21   was issued without notice; and be promptly filed in the clerk's office and entered in the record."

22   Fed. R. Civ. P. 65(b)(2).

23         When deciding whether to issue a temporary restraining order, the court may rely on

24   declarations, affidavits, and exhibits, among other things, and this evidence need not conform to

25   the standards that apply at summary judgment or trial. *See Johnson v. Couturier*, 572 F.3d 1067,

26   1083 (9th Cir. 2009); *see also Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)

27   ("The trial court may give even inadmissible evidence some weight, when to do so serves the

28   purpose of preventing irreparable harm before trial.").

1

**ANALYSIS**

2    **A.    Compliance with Local Rules**

3          As an initial matter, the court recognizes Plaintiff has not strictly complied with the local

4    rules governing applications for temporary restraining orders. For example, Plaintiff has not filed

5    a proposed order or an "affidavit detailing notice, or efforts to effect notice to the affected parties

6    or counsel or showing good cause why notice should not be given" alongside her request for a

7    temporary restraining order.[1] L.R. 231(c). However, Plaintiff's filings include most of the

8    information required by the local rules, including a complaint, a motion or application, a brief on

9    all relevant legal issues presented by the application, and an affidavit in support of the existence

10   of an irreparable injury. *Id.* Plaintiff has also filed a checklist describing her efforts to contact

11   Defendant City, indicating her ex parte application could not have been filed sooner, and stating

12   the need for an expediated hearing. (Doc. No. 3-1.) Therefore, the court exercises its discretion to

13   excuse Plaintiff's noncompliance with the local rules.

14   **B.    Temporary Restraining Order**

15         The court finds Plaintiff is entitled to a temporary restraining order under the "sliding

16   scale" test. First, Plaintiff has adequately shown that she will suffer irreparable harm in the

17   absence of a temporary restraining order because she faces imminent eviction. *See e.g.*, *Volis v.*

18   *City of Los Angeles Hous. Auth.*, No. 2:13-cv-01397-MMM-SP, 2014 WL 12704885, at *3 (C.D.

19   Cal. Jan. 7, 2014) (noting that "under certain circumstances, eviction can constitute irreparable

20   harm"); *Stean v. Wells Fargo & Co.*, No. 3:09-cv-01272-JSW, 2009 WL 1405912, at *2 (N.D.

21   Cal. May 18, 2009) (imminent eviction can constitute irreparable harm). Based on the record

22   before the court, Plaintiff will be evicted from her current shelter by Defendant City on December

23   2, 2024. (Doc. No. 1 at 6.) Plaintiff alleges she filed a written request to engage with Defendant

24   City in an interactive process under ADA "in order to address [Defendant City's] failure to

25   honor" her prior reasonable accommodations request and "to further accommodate [] recent

26   

27   [1] Plaintiff's declaration submitted in support of her ex parte application states that on November 27, 2024, she emailed Defendant City regarding her intention to request a temporary restraining order. (Doc. No. 1 at 29.) It is unclear from the record whether Defendant City received actual

28   notice regarding Plaintiff's request for a temporary restraining order.

1   changes to her disability" on November 25, 2024, but has not yet received a response. (*Id.*)

2   Plaintiff is seeking "appropriate housing and support services" because she is an "elderly,

3   disabled, single woman" who "requires the use of a cane, a walker, a back brace, and a medical

4   boot." (*Id.* at 7.) The court is persuaded by Plaintiff's argument that an eviction may "endanger

5   her and will deny her shelter that is accessible for her disability," particularly because she has no

6   alternative place to stay. (*Id.* at 8).

7          Second, the balance of hardships tips in favor of an injunction because if the eviction is

8   not enjoined, Plaintiff will lose her current shelter. Defendant will only be precluded from

9   proceeding with the eviction for a few weeks. At this juncture, the court cannot say there is an

10  urgent need for Defendant City to evict Plaintiff. *See, e.g., Alvarez v. Wells Fargo Bank, N.A.*,

11  No. 2:15-cv-00943-TLN-DB, 2019 WL 4734757, at *4 (E.D. Cal. Sept. 27, 2019) ("The hardship

12  of an additional delay to allow further briefing . . . pales in comparison to the possibility that

13  Plaintiff could wrongfully lose his home.").

14         Third, the public interest favors a temporary restraining order because it will allow the

15  court the time necessary to review whether an injunction should issue. *See e.g.*, *California

16  Trucking Ass'n v. Becerra*, No. 3:18-cv-02458-BEN-BLM, 2019 WL 7372056, at *2 (S.D. Cal.

17  Dec. 31, 2019) ("The [c]ourt finds that Plaintiffs lack any other adequate legal remedy to preserve

18  the status quo over the brief period of time before the [c]ourt can address their preliminary

19  injunction motion.").

20         Fourth, Plaintiffs need only demonstrate "serious questions" going to the merits of her

21  claims because the balance of hardships tips strongly in her favor. Plaintiff alleges that Defendant

22  City has failed to accommodate her disabilities under the ADA. (Doc. No. 1 at 11–14.) Title II of

23  the ADA provides that "no qualified individual with a disability shall, by reason of such

24  disability, be excluded from participation in or be denied the benefits of the services, programs, or

25  activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

26  12312. Public entities must "make reasonable modifications in policies, practices, or procedures

27  when the modifications are necessary to avoid discrimination on the basis of disability, unless the

28  public entity can demonstrate that making the modifications would fundamentally alter the nature

5

1 of the service, program, or activity." *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir.

2 2004) (citing 28 C.F.R. § 35.130(b)(7)). A duty to provide a reasonable accommodation arises

3 "when a plaintiff's exclusion from participation in a public entity's services, programs, or

4 activities was 'solely by reason of disability.'" *Cooley v. City of Los Angeles*, No. 2:18-cv-09053-

5 CAS-PLA, 2019 WL 3766554, at \*4 (C.D. Cal. Aug. 5, 2019) (citation omitted). A "service" or

6 "benefit" under the ADA may in some circumstances include being "allowed sufficient time to

7 comply with the City's code enforcement activities in a manner consistent with [a] disability." *Id.*

8 at \*5 (citing *McGary*, 386 F.3d at 1269–70). Plaintiff alleges that in response to her request for

9 reasonable accommodation, Defendant City granted a 30-day eviction extension but failed to

10 connect her with support services to locate housing that is accessible for her disabilities as

11 promised. (Doc. No. 1 at 7–8.) Plaintiff further alleges that the current eviction process is "less

12 accessible to [her] than it would be to a non-disabled person due to her limited mobility and

13 fragile mental state." (*Id.* at 14.) Accordingly, the court finds that Plaintiff has raised "serious

14 questions" on the merits of her ADA claim.

15 The court notes that its conclusions are preliminary in nature. Plaintiff has only

16 demonstrated that there are sufficiently "serious questions" regarding Defendant City's liability

17 under the ADA with respect to her request for a temporary restraining order. Defendant City has

18 not been heard in response; it may well be that Defendant City has not violated any law. Based on

19 the current record, however, Plaintiff has demonstrated she is entitled to the limited restraining

20 order she requests.

21 Finally, Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a

22 temporary restraining order . . . only if the movant gives security in an amount that the court

23 considers proper to pay the costs and damages sustained by any party found to have been

24 wrongfully . . .  restrained." The court has "wide discretion in setting the amount of the bond, and

25 the bond amount may be zero if there is no evidence the party will suffer damages from the

26 injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir.

27 2003) (citation omitted). There is no evidence in the record showing Defendant City will suffer

28 damages as a result of a short delay in the eviction. Therefore, Plaintiff need not post a bond.

6

**CONCLUSION**

For the reasons above, the ex parte application for a temporary restraining order (Doc. No. 3) is **granted.** The court grants the application on an ex parte basis to avoid the irreparable harm that Plaintiff would likely suffer if the eviction occurred before this court can consider whether to issue a preliminary injunction.

Defendant and its agents are **enjoined** by this temporary restraining order from conducting the eviction of Plaintiff at 710 Mare Island Way, Vallejo, CA 94590. A hearing on the request for preliminary injunction is set for **1:30 p.m. on December 13, 2024**, absent further order of this court. The hearing will proceed by videoconference. The courtroom deputy will contact the parties with further information no later than twenty-four hours before the hearing. Any opposition, which must not exceed ten pages, excluding any attachments, must be filed no later than **4:30 p.m. on December 6, 2024.** Plaintiffs may file a reply of no more than ten pages, excluding any attachments, by **4:30 p.m. on December 10, 2024.** Plaintiff shall promptly serve a copy of this order on Defendant, who has not yet appeared in this action, and file a declaration confirming service has been completed.

IT IS SO ORDERED.

Dated:    **November 29, 2024**                        _____

Dena Coggins
United States District Judge