Evelyn Davis Alfred
710 Mare Island Way
Vallejo, CA 94590
Tel: 510-999-939
Cell: 510-640-7390
Email: Vallejo.Homeless.Union@gmail.com

FILED

DEC 10 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Evelyn Davis Alfred., <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF VALLEJO, <br><br> Defendant. | Case No.: 2:24-cv-03317-DC-SCR <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF TRO** <br><br> Date: Dec 10, 2024 <br> Time: TBD <br> Trial: TBD <br><br> Hon. Dena Coggins |

## I. INTRODUCTION

In issuing the TRO now in effect, this Court found that the burden of harm tipped enough towards the Plaintiff to justify its intervention. The Defendant City's Reply Brief now shows the scale tips even more decisively in favor of injunctive relief.

At the heart of this case lies the deliberate indifference of the Defendant City towards all unhoused people of Vallejo, the consequence of which is most strongly felt by its especially vulnerable sub-population of disabled, elderly people, such as the Plaintiff. Strikingly, throughout

1

the entirety of its Reply Brief, the Defendant City consistently fails to acknowledge or respond to Plaintiff's arguments. In addition, the Defendant City attached an expired version of its Administrative Rule 7.10 to its Reply Brief. The contents of this document play a pivotal role in the claims of both parties, and the version the Defendant City provided excludes amendments that are central to the Plaintiff's original complaint. The Plaintiff is asking the court to consider that the Defendant City's choice to ignore the gravity of the Plaintiff's complaint in its Reply betrays deliberate indifference in and of itself, and raises serious questions about the Defendant City's further indifference to its own laws that protect the needs and rights of its unhoused residents in general.

## II. STATEMENT OF FACTS

Plaintiffs and Defendant City disagree as to the relevant facts of this case.

1. The Defendant City asserts that on October 30th, 2024, the city received a copy of Plaintiff's request for a reasonable accommodation, and claims that a City Employee called and left a message on Plaintiff's voicemail indicating that the city would grant the Plaintiff a 30 day extension. Plaintiff denies that she ever received this voicemail.

2. The Defendant City asserts that on November 1, 2024, a City Employee spoke with Plaintiff to verbally inform her of her extension and asked Plaintiff if she had connected with the county's homeless services, but Plaintiff did not answer the question and ended the conversation. Plaintiff claims that the city employee, who she believes to be Natalie Peterson, did verbally inform her of the additional 30 days but did not mention services of any kind in any context.

3. The Defendant City has presented the court with an outdated revision of the City of Vallejo's Administrative Rule 7.10. The Plaintiff had Attached the Administrative

Rule 7.10, revision date of 10-26-20, to the original complaint. Defendant City attached Administrative Rule 7.10 with a revision date of 06-17-14 in its reply. These revisions vary significantly in section II., Policy.

4. Defendant City claims that it has strictly adhered to Administrative Rule 7.10 in its effort to remove Plaintiff's encampment, but it did not provide the Plaintiff with 72 hours of notice during the initiation of the eviction process. Plaintiff was handed the notice at 2:30 PM on October 29th, 2024, and the notice stipulated that eviction would begin at 7:00 AM on November 1, 2024. Plaintiff was therefore only given 64.5 hours.

### III. PRELIMINARY INJUNCTION ANALYSIS

**A. Plaintiff is Likely to Succeed on the Merits and Will Suffer Irreparable Harm**

Plaintiff has proved that Defendant City has *already* caused irreparable physical, emotional and psychological injury through the violation of her civil rights as guaranteed by title II of the ADA. Plaintiff has suffered an ankle injury due to denial of packing assistance, leading to a new diagnosis with a worse prognosis, and Plaintiff has a note from her physician of many years that the eviction is causing her duress and threatens her life due to her pre-existing Major Depressive Disorder.

Defendant has deliberately ignored, and therefore failed to rebuff, Plaintiff's assertion that its Administrative Rule defines shelter and community as basic human needs. It is obvious and known to the Defendant City that the loss of those needs would cause irreparable, foreseeable harm, as would the loss of any basic, human need. The Plaintiff herself has already been assaulted, raped and robbed as an immediate consequence of losing both her community protection, and the privacy that her previous shelter provided, as a direct result of an earlier eviction that occurred at another location within the City of Vallejo.

1. <u>The Defendant City has Violated the ADA in Attempting to Evict Plaintiff</u>

The Defendant City does not dispute that the Plaintiff is a person with disabilities. It does not dispute that "by reason of such disability [they cannot], be excluded from participation in or be denied the benefits of [its] services, programs, or activities." *42 U.S.C. § 12132*. It does not dispute that it has a "program." It does not dispute that it is required to provide reasonable accommodations so that people with disabilities can benefit from its programs. It does not dispute that it refused to engage in the Interactive Process with Plaintiff.

Defendant City alleges that honoring Plaintiff's request to stop her eviction will force it to fundamentally alter its program due to the City of Vallejo's Administrative Rule 7.10 and Municipal Code. In its Reply, The Defendant City has ignored the following sections of the most recent revision of Administrative Rule 7.10 and Municipal Code 7.67.010 that emphasize the following:

- That the purpose of evicting unhoused people from their shelters is to respond to complaints, maintain access to public spaces, and protect public safety.
- That community and safety are basic, human rights.
- That its laws promote a balanced approach to address both the needs and rights of both housed and unhoused citizens.
- That its law enumerates a continuum of response options, emphasizing proportionality of response in relation to totality or impacts present in an encampment.

Plaintiff has already demonstrated to the court that her shelter does not meet the purpose of the Defendant City's laws, poses no public safety risk, has improved the space in which she is residing, and does not interfere with access to public spaces. The Defendant City is permitted to halt the eviction as a legitimate option under a continuum of response options that emphasizes proportionality of response under its existing program.

4

The Defendant City claims that providing moving assistance would have fundamentally altered its program. City Defendant claims further that straining its limited resources will additionally fundamentally alter its program. The Defendant City states that its available maintenance employees are *"already engaged in operating heavy equipment, driving dump trucks to and from the encampment site, and taking items to the City's storage location."* In order to store items without damaging them as Defendant City claims that they do in their own notices, City Employees must already be packing and moving unhoused resident's items with some amount of care. The resources and labor required to assist with packing and moving assistance are therefore already allotted by the Defendant City's existing program, and the Defendant City violated Plaintiff's rights when it denied her initial accommodation request.

The Defendant City asserts that *"the City cannot fundamentally alter its program by assisting Plaintiff with finding housing."* However, by its own admission, Defendant City is already engaged in an active partnership with CAP Solano, which provides services and housing. In addition, the Defendant City has ignored that 7.67.050 of the Municipal Code and Section C of Procedure III of the Administrative Rule 7.10 state that an officer may provide information about medical or human services assistance to unhoused people during the eviction process. The Plaintiff is simply asking that the Defendant City not take affirmative action against her, and allow her to remain in her current location, until she is able to move and be housed in an equally safe or safer location. Plaintiff has only asked for assistance in connecting to existing services and existing housing. The Defendant City would not need to fundamentally alter its own program and does not need to create a new program in order to honor Plaintiff's request.

The Defendant City has stated in its reply that it will only grant the Plaintiff an additional 30 days and will offer no further accommodation. The Americans with Disabilities Act requires affirmative action. The Plaintiff's disability has changed, and the Defendant City has proven that it

5

will not connect her with services so that she can move to an equally safe location in a timely manner. Discontinuing the eviction entirely is an accommodation. Deferring the eviction by 30 days is merely a delay.

Defendant City has incorrectly relied on *Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996)*, in which "the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." In *Crowder v. Kitagawa*, "legislature had recently undertaken a review of the quarantine program. In this review, the legislature had conducted hearings and had considered alternatives such as those proposed by the plaintiffs. The effectiveness of both the state's quarantine requirement and the vaccine-based alternatives were vigorously debated by veterinarians, scientists and academicians during these hearings." Defendant City has not recently initiated a review of its program, has declined to even engage in the interactive process with the Plaintiff, and has not evaluated Plaintiff's accommodation request through the lens of a highly fact-specific, case-by-case inquiry.

2. The Defendant City has Violated the "State-Created Danger" Doctrine

In its reply, the Defendant City is using a misrepresentation of its municipal laws to distract from the true sanctity of the "state-created danger" doctrine. Eviction is an affirmative act. Any and all irreparable harm that the Plaintiff would and has already endured as a direct result of the eviction process is the result of an affirmative act of the Defendant City. The City of Vallejo Municipal Code and Administrative Rule actually compel the Defendant City to contemplate leaving the Plaintiff where she is. Regardless, municipal law does not trump the rights guaranteed by the "State-Created Danger" doctrine. Under the holding of *Kennedy v. City of Ridgefield, 439 E 3d 1055 (9th Cir. 2006)*, the 9th Circuit recognizes liability under substantive due process where a state of local official act to place a person in a situation of known danger to their physical safety.

Defendant City of Vallejo has rapidly accelerated the evictions of unhoused people since the Supreme Court ruling on City of Grants Pass v. Johnson. Plaintiff previously resided at her current location, undisturbed, for more than 18 months. The Grants Pass ruling is not a compelling objective to initiate an eviction, as is stated in the ruling itself. "As we have stressed, cities and States are not bound to adopt public-camping laws. They may also choose to narrow such laws (as Oregon itself has recently). Beyond all that, many substantive legal protections and provisions of the Constitution may have important roles to play when States and cities seek to enforce their laws against the homeless." *City of Grants Pass v. Johnson*, No. 23-175, 36 (U.S. Jun. 28, 2024).

The Defendant City does not deny that if the Plaintiff loses her shelter, she will lose her basic protection from the elements. The Defendant City does not dispute that exposure to the elements in general presents a known and obvious danger, particularly as winter approaches. The Defendant City does not dispute that the Plaintiff would be at greater danger of becoming a victim of violent and sexual crime if she were to lose her shelter. The Defendant City does not dispute that protection from crime that the privacy shelter affords a single, elderly, disabled woman is obvious and known. The Defendant City does not dispute that the Plaintiff is benefitting from community protection, or that the danger posed by the loss of that protection is known and obvious for such a vulnerable, single woman.

Defendant City directly states that "*Although the Plaintiff will no doubt be exposed to additional dangers if she chooses not to voluntarily remove her shelter…*" The Defendant City has simply asserted that the Plaintiff can avoid this, because she has had ample time to simply move her existing shelter to a new location. However, the agency of the Plaintiff is not a determining factor within the "state-created danger" doctrine. "In examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we

7

rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the officer left the person in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow Police Department, 227 F.3d 1082 (9th Cir. 2000).* Plaintiff does not need to prove that she has no other options to affirm that the Defendant City has violated the "state-created danger" doctrine.

However, Defendant City is aware that the Plaintiff in fact does have no other options, this has already been demonstrated in the complaint. The Plaintiff cannot *"remove her shelter to another location"* as Defendant City suggested, due to her disabilities and due to the way her shelter is constructed. Plaintiff's shelter is not merely a tent, it is a disability accessible, 1-bedroom residence that has a raised floor, a window in each room, an insulated roof, a bathroom and a shower, and a locking door, all of which are permanently affixed to a solid, wood, structural frame. *(See additional photographs attached Exhibit A)*. Natalie Peterson has visited the Plaintiff's residence multiple times during the eviction process, and has physically posted eviction notices on her shelter, as stated in her declaration. As such, Natalie Peterson is also aware that the Plaintiff cannot voluntarily dismantle and move her shelter, that it cannot be dismantled and stored by the Defendant City for future retrieval, and that it will be consequently destroyed during an eviction. The Defendant City has stated in its Reply that this will cause the Plaintiff to be exposed to greater danger. The Defendant City and its officer, Natalie Peterson, are therefore aware that the Plaintiff will lose her protection from the elements as a consequence of the eviction and are deliberately indifferent to the known danger.

Even if the Plaintiff were physically able to move her shelter, the Defendant City does not dispute that she has no alternative, legal place to place a shelter. If the Plaintiff were to respond by erecting a shelter illegally in a new location, the Plaintiff would immediately face the harmful

8

eviction process once again. The Defendant City therefore cannot guarantee that any future location that the Plaintiff will relocate to will be as safe or safer and has provided no evidence in this regard.

Defendant City incorrectly cites Reed v. City of Emeryville, because Plaintiff's case has a different set of facts. In Reed v. City of Emeryville, "the City offered plaintiffs shelter beds at St. Vincent de Paul," and the court permitted the Shellmound Encampment to be cleared, "because it was unsafe given its proximity to an active construction site," and "a shelter bed is safer than an encampment abutting an active construction site." *Reed v. City of Emeryville, 568 F. Supp. 3d 1029, 1039-40 (N.D. Cal. 2021)* Plaintiff's camp is not abutting an active construction site, and the Defendant City has not offered her a shelter bed.

The Defendant City does not dispute that it failed to respond to Plaintiff's request to engage in the interactive process. A central purpose of the interactive process is to discuss foreseeable harm that will occur if an accommodation is not granted. Plaintiff has demonstrated that the act of moving itself is harmful. If the Defendant City was not deliberately indifferent, the Defendant City would have agreed to engage in the interactive process to learn more about the danger the Plaintiff would be placed in if she was not granted an accommodation. Injury was therefore foreseeable, and the officers of the Defendant City were deliberately indifferent to the danger.

**B. The Balance of Equities Tips in the Plaintiff's Favor and the Injunction is in the Public Interest**

Defendant City claims the balance tips in its favor if the court would consider the City of Vallejo's Municipal Code and Administrative Rule. Defendant City claims it must *"balance any potential rights of encamped individuals, against its duty to maintain public health and safety and enforce its laws."* However, the Plaintiff's residence does not interfere with the Defendant

9

City's ability to maintain public health and safety. Additionally, Defendant City has not strictly adhered to Administrative Rule 7.10.

The injunction in fact serves the Public Interest, because if the Plaintiff is evicted, the Defendant City will waste limited resources, the neighborhood will gain nothing, and will lose the positive impact the Plaintiff is providing. Additionally, if the injunction is not granted, the Defendant City will betray the general public by violating the values, ethics, and duties of the City of Vallejo as described in both its Administrative Rule and Municipal Code.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court grant Plaintiff's request for a temporary restraining order and preliminary injunction.

Respectfully Submitted,

*/s/ Evelyn Davis Alfred*

Evelyn Davis Alfred

Plaintiff

710 Mare Island Way

Vallejo, CA 94590

Dated 12/10/2024

EXHIBIT A

EXHIBIT A
Case 2:24-cv-03317-DC-SCR   Document 8   Filed 12/10/24   Page 13 of 16



1 of 1                                                                                                                    12/10/2024, 10:23 AM



20241207_140513.jpg  Case 2:24-cv-03317-DC-SCR  Document 8  Filed 12/10/24  Page 15 of 16   https://drive.google.com/drive/u/1/folders/172oQd5rua4j82bmaaPf...

EXHIBIT A



Evelyn Davis Alfred
710 Mare Island Way
Vallejo, Solano
CA 94590


Evelyn Davis Alfred

Vs

The City of Vallejo

Case No: 2:23-cv-3317 DC SCR (PS)

MOTION TO EMAIL PLAINTIFF

I, Evelyn Davis Alfred, Plaintiff in this case, request that the court add the email address Vallejo.Homeless.Union@gmail.com to my contact information. Please contact me and update me about my case via this email address as well as by phone and by mail.

Respectfully,

Evelyn Davis Alfred

12/10/2024