Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Andrea M. Henson (SBN#331898)
Counsel for Plaintiff
Where Do We Go
2726 Martin Luther King Junior Way
Berkeley, CA 94703
Tel: 510-640-7390
Email: ahenson@wdwg.org

Attorneys for Plaintiff

# UNITED STATES COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELYN DAVIS ALFRED,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY OF VALLEJO,<br><br>  Defendant. | Case No.: 2:24-cv-03317-DC-SCR<br><br>**DECLARATION OF ROBBIE POWELSON IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 31, 2025<br>Time: 1:30 pm<br>Hearing: Motion for Preliminary Injunction<br><br>Hon. Dena Coggins |

### DECLARATION OF ROBBIE POWELSON

I, ROBBIE POWELSON hereby swear and affirm that the following is a true statement:

1. I am an officer with California Homeless Union. In my role with the Union, I am very familiar with the interactive process for disability accommodations and have represented dozens of homeless Union members and other unhoused persons in this regard. I have also been a co-presenter in legal CLE classes run by Disability Rights Education Defense Fund for attorneys doing ADA law for people experiencing homelessness. I have extensive

Declaration of Robbie Powelson In Support of Motion for Preliminary Injunction

Page | - 2 -

1. experience in engaging in the interactive process for homeless people with disabilities under Title II and other provisions of the Amended Americans with Disabilities Act, Rehabilitation Act, California Fair Employment Act and pursuant to Court orders requiring cities to engage in the process to accommodate homeless persons in encampments.

2. I was requested to attend the interactive process meeting between Ms. Alfred and the City of Vallejo on January 30th. I was present to assist Ms. Henson, because Ms. Henson had a conflicting court date that required her to step out from the meeting for a period of time. I was in the meeting throughout the afternoon.

3. The meeting occurred in person at City Hall with Plaintiff Evelyn Alfred and Vallejo ADA Coordinator Jasleen Singh, Assistant City Manager Natalie Peterson, and City Attorney Jackson Hampton. There were no representatives of the City present from any of the housing programs that the City of Vallejo participates in, no one assigned to Code issues and no one with expertise or experience in disability accommodations as it applies to unhoused residents of Vallejo.  Ms. Alfred's attorney Andrea Henson and Union Officer Elizabeth Smith were also present.

4. The meeting began with Jackson Hampton asserting there were about 17 building code violations of Ms. Alfred's home that was identified by the City's building department, and that Ms. Alfred would have to leave as soon as possible. I requested to be provided with the list of the specific violations but the City did not agree to provide it.

5. I requested if we could get the building department involved in the discussion, find a time to do a joint inspection to resolve the code infractions. Mr. Hampton refused the proposal out of hand.

6. I asked if he'd identify and explain the specific building deficiencies or safety concerns. Mr. Hampton refused.

Declaration of Robbie Powelson In Support of Motion for Preliminary Injunction

7. I requested if there was a way we could apply for permits for use on public property. Jackson Hampton said there were not.

8. I asked if there were permit processes we could access similar through other permitting process made by the City to allow for the renting of public property. Mr. Hampton said that Ms. Alfred would not be eligible for a modified version of those programs. Mr. Hampton said the City would not consider any program outside of its encampment abatement policies.

9. I requested information about the City's operating bathrooms and water fountains in the City. I advised the City that currently, Ms. Alfred has 24/7 access to water and bathroom facilities in her through her supportive housed neighbors. Peterson, Singh, and Hampton advised me that the only one public bathroom in the entire City, the one at City Hall which is only open during the day. I asked if Ms. Alfred would be able to get 24/7 access to the bathroom at City Hall. Mr. Hampton said she could not.

10. I also requested if Ms. Alfred was forced to leave, if they would be able move her belongings to a new location near a water fountain and bathroom. Mr. Hampton said no, that the City would not permit her to move anywhere in the City.

11. I asked if Ms. Alfred would just have to be continuously be evicted from location to location. Mr. Hampton demurred and reemphasized that she was not permitted to camp anywhere.

12. I asked if she would be allowed to relocate to an area that was street accessible so that she did not aggravate her injured ankle that is in a medical boot. Mr. Hampton demurred and said she would not be permitted to be anywhere.

13. I asked Ms. Singh about her offer in her declaration about helping Ms. Alfred pack and move her belongings [ECF 28 ¶13] – and if the City would help her pack and move her belongings to a place with water and a bathroom. Ms. Singh said she would refer that to the

Declaration of Robbie Powelson In Support of Motion for Preliminary Injunction

Page | - 3 -

City Attorney. Mr. Hampton said the City would not permit Ms. Alfred to camp anywhere in the City.

14. We informed Ms. Singh them that Ms. Alfred had contacted all of the resources Ms. Singh had provided her – and that Ms. Alfred was either not eligible or on a waiting list for all of them. Ms. Alfred had also gone out in the private market looking for a place – to no avail.

15. I asked Ms. Singh that because Ms. Alfred had been diligently looking for housing if she would grant another 6-week extension as she did before. She referred it to the City Attorney. Mr. Hampton said that was outside the scope of the City's program.

16. I put it to the City that they were putting Ms. Alfred in a Catch-22; no matter what she does she is going to run afoul of their rules, and her property will be abated, and that she will continuously experience this problem because there is no housing available to Ms. Alfred through either public assistance or the private market. I tried to explain that because of this cycle, Ms. Alfred needs to have some place to be that has access to water, and a bathroom, like she currently has – that is nearby. She cannot walk far or access bathroom or water because of her debilitating conditions. I just asked, where can she go that is going to have similar hygiene facilities. Mr. Hampton said that was outside the City's program and would not be considered as part of the interactive process.

17. I asked Natalie Peterson if she would help triage Ms. Alfred to the services since she represented she was the City's coordinator with County's Continuum of Care. Ms. Peterson agreed that she could call and check about Ms. Alfred's status with Community Access Partnership of Solano "CAP Solano". She emphasized she had no control over the decisions of CAP Solano. She said she could check on Ms. Alfred's status.

18. We agreed that if the City contacted CAP Solano that it could informally motivate CAP Solano to take action to get Ms. Alfred housed.

Declaration of Robbie Powelson In Support of Motion for Preliminary Injunction

19. In my capacity as a Homeless Union officer, I have personally participated in negotiations with numerous California cities including, most recently, Sausalito, San Rafael and Novato which have resulted in agreements to permit tent encampments. In every instance, particularly with regard to homeless persons with disabilities, the agreements have included, on a case-by-case, non-precedential basis variances from, exceptions to and suspension of enforcement of existing municipal codes. In every case, these agreements have included cooperation in identifying and rectifying safety and health issues.

20. The result of these agreements has been that the temporary encampments have become stable staging grounds for placing significant numbers of its residents into permanent housing.

I swear under penalty of perjury under the laws of the United States and the State of California that the foregoing is a true and correct statement based on personal knowledge.

Dated: January 30, 2025                                    /s/ Robbie Powelson

Executed at Sausalito, CA

Page | - 5 -

Declaration of Robbie Powelson In Support of Motion for Preliminary Injunction