1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EVELYN DAVIS ALFRED,                    No.  2:24-cv-03317-DC-SCR

12              Plaintiff,

13        v.                                 ORDER GRANTING PLAINTIFF'S MOTION
                                             FOR A PRELIMINARY INJUNCTION
14   CITY OF VALLEJO,
                                             (Doc. No. 1)
15              Defendant.

16

17        This matter came before the court on December 13, 2024, January 14, 2025, and January

18   31, 2025 for a hearing via videoconference on Plaintiff's motion for a preliminary injunction.

19   (Doc. No. 1.) Attorneys Anthony D. Price and Andrea M. Henson specially appeared on behalf of

20   Plaintiff, who also appeared alongside her support person, Elizabeth Smith. Attorney Hampton A.

21   Jackson appeared on behalf of Defendant. For the reasons explained below, the court will grant

22   Plaintiff's motion for preliminary injunction.

23                                  **BACKGROUND**

24        Plaintiff Evelyn Davis Alfred is a 64-year-old single woman who has been unhoused for

25   over two decades. (Doc. No. 1 at 23.) Plaintiff alleges she has several physical disabilities,

26   including severe osteoarthritis and osteomyelitis in her shoulder and ankle, and degenerative disk

27   disease. (*Id.*) Plaintiff requires the use of a cane, walker, back brace, and medical boot to move

28   around. (*Id.*) Plaintiff has difficulty lifting her arms over her head and bending over to retrieve

1    items. (*Id.*) Plaintiff further alleges she suffers from mental health issues, including major

2    depressive disorder, severe social anxiety, loss of self-esteem, and suicidal ideations. (*Id.* at 23,

3    27, 54; *see also* Doc. No. 8 at 3.)

4         For nearly two years, Plaintiff has lived in a shelter she built on a strip of land next to a

5    residential neighborhood at 710 Mare Island Way, Vallejo, California 94590 ("710 Mare Island").

6    (Doc. No. 1 at 5, 23.) Plaintiff constructed her shelter using "tarps and other building materials."

7    (*Id.* at 5.) Plaintiff's shelter "has a raised floor, a window in each room, an insulated roof, a

8    bathroom and a shower, and a locking door, all of which are permanently affixed to a solid, wood,

9    structural frame." (Doc. No. 8 at 8.) Plaintiff asserts that her shelter "is the only protection from

10   the elements . . . available to her," helps her maintain hygiene, accommodates her mobility

11   challenges, and stores necessities such as food, water, and medication. (Doc. No. 1 at 15, 28.)

12        On October 29, 2024, around 2:30 p.m., employees of Defendant City of Vallejo

13   ("Defendant City") visited Plaintiff near her shelter and provided her with a written notice of

14   trespass and property and debris removal pursuant to California Penal Code § 647(e), Vallejo

15   Municipal Code 7.67, and Vallejo Administrative Rule 7.10, "Enforcement of Unlawful Camping

16   Ordinance; Clean Up of Temporary Shelters, and Temporary Storage of Unattended Property."[1]

17   (Doc. Nos. 7 at 1–2; 7-1 at 19.) That notice informed Plaintiff her shelter would be removed

18   approximately 65 hours later, on November 1, 2024, and her personal property would be stored

19   by Defendant City for 90 days without charge before being deemed abandoned and destroyed on

20   February 14, 2025. (Doc. Nos. 1 at 76; 7-1 at 19.)

21        The same day, on October 29, 2024, Plaintiff submitted a written request to Defendant

22   City for reasonable accommodations under Title 2 of the Americans with Disabilities Act

23

---

24   [1] In support of its opposition to the pending motion for a preliminary injunction, Defendant City
     concurrently filed the declaration of Natalie Peterson, an assistant to the city manager. (Doc. No.
25   7-1.) Ms. Peterson attaches a copy of Vallejo Administrative Rule 7.10 dated June 17, 2014 as an
     exhibit to that declaration. (Doc. No. 7-1 at 10–13.) However, Plaintiff's complaint attaches a
26   copy of Vallejo Administrative Rule 7.10 dated October 26, 2020. (Doc. No. 1 at 85–90.) At a
     hearing on December 13, 2024, counsel for Defendant City confirmed it is implementing the
27   version of Vallejo Administrative Rule 7.10 dated October 26, 2020. Accordingly, all references
     in this order to Vallejo Administrative Rule 7.10 refer to the version dated October 26, 2020.
28

("ADA"), 42 U.S.C. §§ 12131, *et seq.* (Doc. No. 1 at 27, 74–75.) Specifically, Plaintiff requested an additional "30 days of time to pack and assistance moving." (*Id.*)

On October 31, 2024, Plaintiff filed a civil action against Defendant City as well as the Vallejo Police Department and Dale Matsuoka, seeking a temporary restraining order and preliminary injunction enjoining Defendant City from removing her from 710 Mare Island. *See Alfred v. City of Vallejo, et al.*, No. 2:24-cv-02993-DJC-AC ("*Alfred I*"). On November 1, 2024, the court in that case ordered those defendants to inform the court whether the eviction notice posted on October 29, 2024 had been enforced, and whether Plaintiff's written request for a reasonable accommodation had been granted or denied by Defendant City. (*Alfred I*, Doc. No. 5.) Defendant City filed a status report the same day notifying the court it had granted Plaintiff's request for reasonable accommodations and would delay removal of her shelter until December 2, 2024. (*Alfred I*, Doc. No. 6.) Accordingly, the court denied Plaintiff's motion for temporary restraining order as moot.[2] (*Alfred I*, Doc. No. 7.)

On November 21, 2024, an employee of Defendant City returned to Plaintiff's shelter and posted a second written notice of trespass and property and debris removal pursuant to California Penal Code § 647(e), Vallejo Municipal Code 7.67, and Vallejo Administrative Rule 7.10, "Enforcement of Unlawful Camping Ordinance; Clean Up of Temporary Shelters, and Temporary Storage of Unattended Property." (Doc. Nos. 1 at 72; 7 at 2; 7-1 at 21.) The notice informed Plaintiff her shelter would be removed on December 2, 2024, and her personal property would be stored by Defendant City for 90 days without charge before being deemed abandoned and destroyed on March 7, 2025. (Doc. Nos. 1 at 72; 7-1 at 21.)

On November 25, 2024, Plaintiff submitted a written request to Defendant City to engage in an interactive process to discuss her request for reasonable accommodations under Title 2 of the ADA. (Doc. No. 1 at 6, 69–71.) Plaintiff alleges Defendant City failed to address the entirety of her earlier October 29, 2024 request for reasonable accommodations because Defendant City

---

[2] The court specified that its order denying Plaintiff's motion for a temporary restraining order as moot "shall not be construed to deny Plaintiff the ability to seek later preliminary injunctive relief." (*Alfred I*, Doc. No. 7.)

granted a 30-day extension but did not provide her with "any assistance packing and/or moving her belongings as stipulated in the original accommodation request." (Doc. No. 1 at 5-6). Plaintiff further alleges that as a result of attempting to pack without assistance, she injured her ankle on November 20, 2024. (*Id.* at 5, 26.) Hence, Plaintiff sought to "address [Defendant City's] failure to honor the entirety of her original request and to further accommodate the recent changes in her disability" through an interactive process. (*Id.* at 6.)

On November 27, 2024, Plaintiff filed the instant action against Defendant City, seeking a temporary restraining order and preliminary injunction "to maintain the status quo, stop the eviction, and prevent irreparable harm to [P]laintiff." (Doc. Nos. 1 at 19; 3.) In her complaint, Plaintiff alleges four causes of action under 42 U.S.C. § 1983 for violations of (1) the Fourth Amendment's prohibition against unreasonable seizure, (2) the Fifth Amendment's takings clause, (3) the Fourteenth Amendment's state-created danger doctrine, (4) procedural and substantive due process under the Fourteenth Amendment, and a fifth cause of action for violation of (5) Title II of the ADA, 42 U.S.C. §§ 12131, *et seq.* (*Id.* at 10–18.)

On November 29, 2024, the court granted Plaintiff's request and issued a temporary restraining order enjoining Defendant City from removing Plaintiff from 710 Mare Island to maintain the status quo and prevent irreparable harm to Plaintiff pending the court's consideration of her motion for a preliminary injunction. (Doc. No. 4.) Based on the limited record before it at that time, the court found Plaintiff raised "serious questions" on the merits of her ADA claim because Defendant City had not responded to the entirety of Plaintiff's request for reasonable accommodations or her request to engage in an interactive process. (*Id.* at 4–6.) A hearing on Plaintiff's motion for preliminary injunction was set for December 13, 2024. (*Id.* at 7.) Defendant City filed an opposition to Plaintiff's motion for preliminary injunction on December 6, 2024. (Doc. No. 7.) Plaintiff filed her reply thereto on December 10, 2024. (Doc. No. 8.)

At the December 13, 2024 hearing, the court inquired as to the status of Plaintiff's request for reasonable accommodations. Counsel for Defendant City, Attorney Jackson, confirmed that it did not grant Plaintiff's request for assistance packing and moving her belongings, and did not respond to Plaintiff's request to engage in the interactive process under the ADA because it

4

interpreted Plaintiff's request as an attempt to delay her removal. However, Attorney Jackson

informed the court of Defendant City's intention to engage in an interactive process with Plaintiff

to address her request for reasonable accommodations following the hearing.

Attorney Jackson also confirmed Defendant City intended to implement Vallejo

Administrative Rule 7.10 in noticing Plaintiff's shelter for removal. Vallejo Administrative Rule

7.10 sets forth Defendant City's "policies and procedures for cleaning up areas in which

individuals have constructed temporary shelters, and expresses [Defendant City's] intention to

implement these policies in a manner which balances the needs and rights of all of its citizens,

including the residents of such temporary shelters." (Doc. No. 1 at 85–90.) It requires Defendant

City to provide a verbal warning and 72-hour written notice before removing a temporary shelter

encampment that violates Vallejo Municipal Code 7.67. (*Id.* at 86–87.) Vallejo Administrative

Rule 7.10 also "seeks to promote a balanced approach to addressing potential negative impacts of

encampments, while respecting the need for shelter, safety, and community." (*Id.* at 85.) The rule

specifies, as part of the encampment removal process, Defendant City's notice of impending

removal "shall include information on shelters, storage, and other services and facilities" and "to

the extent feasible, specific shelter and housing alternatives will be offered to individuals prior to

relocation or removal of an [e]ncampment." (*Id.* at 88.)

When the court inquired as to whether Defendant City provided information regarding

shelter and housing alternatives to Plaintiff in accordance with Vallejo Administrative Rule 7.10,

Attorney Jackson represented that Defendant City does not provide any shelter or housing

services. However, Attorney Jackson also acknowledged Defendant City participates in the

County of Solano's Community Action Partnership Joint Powers Authority ("CAP Solano"),

which assists individuals in Solano County with shelter housing. Attorney Jackson agreed to

provide Plaintiff with the contact information for CAP Solano, though Plaintiff clarified at the

hearing that she had already reached out to CAP Solano in November 2024 and was told no

housing was available.

At the conclusion of the December 13, 2024 hearing, both parties consented to extending

the temporary restraining order to allow them to engage in the interactive process. The court also

found good cause to extend the temporary restraining order on that basis. The court ordered the hearing on Plaintiff's motion for preliminary injunction continued to January 14, 2025. (Doc. No. 9.)

On December 24, 2024, the parties initiated the interactive process to discuss Plaintiff's request for reasonable accommodations under the ADA. (*See* Doc. Nos. 12 at 2; 14 at 2.) Plaintiff joined the meeting alongside her support person, Elizabeth Smith. (*Id.*) Jasleen Singh, a human resources employee for Defendant City, joined the meeting on behalf of Defendant City. (*Id.*) At the meeting, Plaintiff reiterated her request for assistance packing and moving her belongings. (Doc. No. 12 at 2–3.) In addition, Plaintiff requested another 30-day extension to find housing, during which time she would check in with Defendant City to show that she was working on finding housing and assistance in securing housing. (*Id.*) In response to Plaintiff's requests, Ms. Singh stated she did not have authority to authorize any specific extension of time to find housing, but Plaintiff's request would be noted by Defendant City. (*Id.* at 2.) Ms. Singh further stated Defendant City "did not have any housing options" and "no programs in place that were dedicated to housing," but offered to provide any resources Defendant City was "partnered with or that was available through the community." (*Id.* at 3; *see also* Doc. No. 28 at 2.)

On December 27, 2024, Ms. Singh sent Plaintiff an email with attachments containing information on housing resources Defendant City has partnered with or are available through the community. (Doc. No. 28 at 2.) The attachments contained contact information for Resource Connect Solano, the intake system for CAP Solano and Solano County Community Integration Services. (*Id.*; *see also* Doc. No. 35 at 2.) The attachments also contained information on housing resources Plaintiff is ineligible for, such as Bringing Families Home and Fighting Back Partnership Family Resource Center, resources for families with children. (*Id.*)

On January 2, 2025, the parties met and conferred telephonically. (Doc. No. 12 at 3.) Defendant City informed Plaintiff's counsel that it was meeting internally to discuss Plaintiff's requests and would have a follow-up meeting with Plaintiff the week of January 6, 2025. (*Id.*) Ultimately, a follow-up meeting did not take place during the week of January 6, 2025.

On January 10, 2025, Ms. Singh informed Plaintiff that Defendant City granted her

1    request for assistance with packing and moving her belongings. (Doc. No. 28 at 3.) Ms. Singh

2    also requested information related to Plaintiff's efforts to locate alternative housing and medical

3    restrictions. (*Id.*)

4        On January 14, 2025, both parties appeared before the court and agreed to a short

5    continuance of the hearing because Plaintiff's counsel had been hospitalized for a serious medical

6    emergency. (Doc. No. 15.) The parties also expressed a willingness to engage in a settlement

7    conference before a magistrate judge. Therefore, the court continued the hearing to January 27,

8    2025, and found good cause to extend the temporary restraining order to allow the parties to

9    continue engaging in Defendant City's interactive process and explore settlement.[3]

10        On January 23, 2025, the parties participated in a settlement conference but were

11    unsuccessful in reaching a settlement. (Doc. No. 22.)

12        Over the next few days, Defendant City filed several additional declarations in support of

13    its opposition to the pending motion for preliminary injunction. On January 24, 2025, Defendant

14    City filed a declaration of Scott Sanders, a senior building inspector for Defendant City, who

15    summarily states that Plaintiff's shelter "should be immediately posted for violations," "an order

16    to abate should be issued," and "the structure removed after thirty (30) days," because Plaintiff's

17    shelter "is not suitable for habitation" and "needs to be immediately red tagged." (Doc. No. 24 at

18    1.) Defendant City also filed a supplemental declaration of Ms. Peterson, who states that

19    Defendant City "has been involved in or is currently involved in three housing projects: Blue Oak

20    Landing, Broadway Project, and Navigation Center," and of those three housing projects, only

21    Blue Oak Landing is in operation. (Doc. No. 23 at 2.) According to Ms. Peterson, Defendant City

22    provided federal funding to build the Blue Oak Landing project through grants provided by

23    Vallejo Housing Authority. (*Id.*) "The Vallejo Housing Authority also provides federally funded,

24    project-based vouchers that can be used for housing at Blue Oak Landing; housing vouchers are

25    also available through County of Solano." (*Id.*)

26

27    _____

[3] On January 27, 2025, the court issued a minute order continuing the hearing on Plaintiff's
motion for preliminary injunction to January 31, 2025, due to an unforeseen scheduling conflict.
28    (Doc. No. 25.)

On January 30, 2025, the parties engaged in a second interactive process meeting. (Doc. No. 33 at 2.) Robbie Powelson, an officer with California Homeless Union, joined the meeting on Plaintiff's behalf alongside Ms. Smith and Attorney Henson. (*Id.*) Ms. Peterson joined the meeting on behalf of Defendant City alongside Ms. Singh and Attorney Jackson. (*Id.*) Plaintiff provided information regarding her efforts to obtain alternative shelter or housing. (Doc. No. 37.) Plaintiff reported that she has been a client of Resource Connect Solano since November 18, 2024, shortly after receiving the first notice of trespass from Defendant City. (Doc. Nos. 35 at 2; 37 at 2.) Plaintiff has active applications with Caminar and Lutheran Social Services programs through Resource Connect Solano, but neither have resulted in shelter or housing thus far. (*Id.*) Plaintiff further reported that she has contacted over a dozen housing options for which she is eligible but was told they each have a waiting list.[4] (Doc. No. 37 at 2.)

At the meeting, Plaintiff requested information from Defendant City regarding Plaintiff's current shelter options should she be removed from 710 Mare Island.[5] (Doc. No. 33 at 2–4.) Specifically, Plaintiff asked if she could apply for permits for use on public property, rent public property, access the bathroom at Vallejo City Hall, move her belongings to a new location near a water fountain and bathroom, or move her belongings to an area that is street accessible. (*Id.*) Attorney Jackson purportedly denied all requests, repeatedly stating that Defendant City "would

---

[4] Plaintiff contacted: Holiday Gardens located at 19 Panorama Drive (traditional housing); Sereno Village located at 750 Sereno Drive (affordable housing); Redwood Shores at 400 Redwood Street (affordable senior housing); Solano Vista located at 40 Valle Vista Avenue (affordable senior housing); The Meritage Apartments located at 55 Valle Vista Avenue (traditional housing); Sterling Village located at 88 Ville Vista Avenue (traditional housing); Bay View Vista located at 445 Redwood Street (affordable senior housing); Marina Vista located at 201 Maine Street (affordable housing); Carolina Heights located at 135 Carolina Street (affordable housing); Avian Glen located at 301 Avian Drive (affordable housing); Longshore Cove located at 201 Maine Street (affordable housing); Sundance at 60 Rotary Way (traditional housing); Blue Rock Village located at 2000 Ascot Parkway (traditional housing); and North Gateway Apartments at 2401 Broadway Street (traditional housing). (Doc. No. 37 at 2.) In addition, Ms. Smith reached out to Victory Outreach Church of Vallejo, Ascension Arms, and Opportunity House on behalf of Plaintiff, but these resources also have wait lists or eligibility requirements Plaintiff does not satisfy. (Doc. No. 35 at 3.)

[5] Plaintiff also sought a list of building code violations for her shelter and proposed jointly resolving the infractions, which Defendant City refused. (*Id.* at 2.)

1    not permit [Plaintiff] to move anywhere in the City" and "would not permit [Plaintiff] to camp

2    anywhere in the City." (*Id.*) When asked if there is anywhere Plaintiff can go with access to water

3    and hygiene facilities, Attorney Jackson purportedly stated that was "outside [Defendant City's]

4    program."[6] (*Id.*) At Plaintiff's request, however, Ms. Peterson agreed to "call and check about

5    [Plaintiff's] status with [CAP Solano]" given Ms. Peterson's involvement in Solano County's

6    supportive housing projects.[7] (*Id.*)

7        That same day, on January 30, 2025, Plaintiff filed two declarations from registered

8    nurses in support of her motion for preliminary injunction. (Doc. Nos. 29, 31.) The first

9    declaration is from Timothy Gholston, a public health nurse who has focused on the field of

10   homeless health services for the past 25 years. (Doc. No. 29.) The second declaration is from

11   Jared Bunde, a public health nurse for the County of Contra Costa, who has studied the health

12   impacts of homelessness for the past 15 years. (Doc. No. 31.) In their declarations, Mr. Gholston

13   and Mr. Bunde opine that Plaintiff will face an increased risk of harm if removed from her current

14   shelter without an alternative living accommodation because she is a 64-year-old woman with

15   physical disabilities and mental health conditions. (*See* Doc. Nos. 29, 31.)

16       On January 31, 2025, prior to the start of the hearing, Defendant City filed an amended

17   declaration from Mr. Sanders, in which he specifies he visited Plaintiff's shelter on December 19,

18   2024 and returned on January 13, 2025. (Doc. No. 36 at 2.) In his amended declaration, Mr.

19   Sanders lists 14 violations of the 2022 California Building Code, ranging from Plaintiff's failure

20   to obtain permits and unsafe construction to the absence of required heating for dwellings,

21   plumbing fixtures, kitchen facilities, smoke alarms, and automatic fire sprinklers. (*Id.*)

22       At the hearing on January 31, 2025, Attorney Prince requested that the court issue a

23   preliminary injunction enjoining Defendant City from removing Plaintiff's shelter at 710 Mare

24   Island for a reasonable period of time to preserve the status quo while a record is developed in

25   _____

26   [6] Defendant City has not contested the assertions in Mr. Powelson's declaration regarding the
     January 30, 2025 interactive process meeting.

27   [7] At this time, it is unclear if Ms. Peterson reached out to CAP Solano to inquire as to Plaintiff's

28   application status.

1   this case and to prevent irreparable harm to Plaintiff. Attorney Prince argued that Defendant City

2   would violate Plaintiff's Fourteenth Amendment substantive due process rights under the state-

3   created danger doctrine by exposing her to an increased risk of very serious harm if they removed

4   her shelter. Specifically, Attorney Prince argued that Plaintiff's shelter offers her protection from

5   the elements and proper sanitation. He emphasized Plaintiff has no other place to go, is physically

6   unable to carry her vital possessions due to her disabilities and is particularly vulnerable to sexual

7   assault. Attorney Prince further argued that Defendant City has not presented any evidence

8   regarding a compelling government interest in removing Plaintiff's shelter, and it would be in the

9   public interest to allow Plaintiff to remain where she is while she continues to pursue alternative

10  shelter or housing.

11       In opposition, Attorney Jackson argued that Plaintiff has not raised a serious question on

12  the merits of her state-created doctrine claim. In particular, Attorney Jackson argued that Plaintiff

13  has failed to identify an injury she would suffer if Defendant City removed her shelter, and any

14  such injury would not be foreseeable. Attorney Jackson further argued that Defendant City is not

15  deliberately indifferent to a known danger to Plaintiff because Defendant City has granted

16  Plaintiff's requests for additional time to move and has engaged in the interactive process.

17  Finally, Defendant City argued that it has balanced Plaintiff's rights with its duty to maintain

18  public safety and health and enforce its laws, citing the purported building code violations at

19  Plaintiff's shelter.

20                              **LEGAL STANDARD**

21       Under Federal Rule of Civil Procedure 65, the court has the authority to issue preliminary

22  injunctive relief. A preliminary injunction may issue if a plaintiff establishes that (1) they are

23  likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of

24  preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the

25  public interest. *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). When the

26  nonmovant is the government, the last two *Winter* factors merge. *See Baird v. Bonta*, 81 F.4th

27  1036, 1040 (9th Cir. 2023).

28       The Ninth Circuit has adopted a "sliding-scale approach" where "a stronger showing of

one [*Winter*] element may offset a weaker showing of another." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. "Serious questions" are questions that "'cannot be resolved one way or the other at the hearing on the injunction' because they require 'more deliberative investigation.'" *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) (citation omitted). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (citation omitted).

**ANALYSIS**

Plaintiff seeks a preliminary injunction prohibiting Defendant City from removing her shelter at 710 Mare Island in order to maintain the status quo and prevent irreparable harm to Plaintiff. Plaintiff's motion for preliminary injunction is based upon her claims for a violation of Title II of the ADA and the Fourteenth Amendment's state-created danger doctrine.[8]

**A.    Likelihood of Success on the Merits**

1.    <u>Title II of the ADA</u>

Plaintiff alleges that Defendant City has failed to accommodate her disabilities in violation of Title II of the ADA. (Doc. Nos. 1 at 5, 11–12; 8 at 3–6.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12312. To establish a violation of Title II of the ADA, "a plaintiff must show: (1) [s]he is a 'qualified individual with a disability'; (2) [s]he was either excluded from participation in or denied the benefits of a public

---

[8] In their respective briefing on Plaintiff's motion for preliminary injunction, both parties focus on Plaintiff's ADA and Fourteenth Amendment state-created danger claims. (*See* Doc. Nos. 1, 7, 8.) At the January 31, 2025 hearing, Plaintiff's counsel confirmed that the motion for preliminary injunction is based upon these claims. Based on counsel's representation, and because the court finds Plaintiff has raised serious questions as to the merits of her Fourteenth Amendment state-created danger claim, the court need not address Plaintiff's remaining claims.

entity's services, programs, or activities, or was otherwise discriminated against by the public

entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of h[er]

disability." *Payan v. Los Angeles Cmty. Coll. Dist*., 11 F.4th 729, 737 (9th Cir. 2021) (quoting

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

A public entity's failure to provide reasonable accommodation can constitute

discrimination under Title II of the ADA. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir.

2002). The federal regulations implementing Title II of the ADA require public entities to "make

reasonable modifications in policies, practices, or procedures when the modifications are

necessary to avoid discrimination on the basis of disability, unless [it] can demonstrate that

making the modifications would fundamentally alter the nature of the service, program, or

activity." *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004) (citing 28 C.F.R.

§ 35.130(b)(7)(i)). The distinction between a reasonable modification and fundamental alteration

is "fact-specific, requiring case-by-case inquiry." *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th

Cir. 1996).

Here, the parties agree that the public service or program at issue is Defendant City's

implementation of Vallejo Administrative Rule 7.10, which enforces Vallejo Municipal Code

7.67. (Doc. Nos. 8 at 4; 7 at 4); *see also Where Do We Go Berkeley v. Cal. Dep't of Transp*., 32

F.4th 852, 861 (9th Cir. 2022) ("[T]he ADA's prohibition on discrimination in public

programs 'bring[s] within its scope anything a public entity does,'" including "the way [public]

entities enforce the law.") (citation omitted). Immediately after receiving a notice of trespass and

property and debris removal from Defendant City pursuant to Vallejo Administrative Rule 7.10,

on October 29, 2024, Plaintiff submitted a written request for reasonable accommodation under

the ADA. (Doc. No. 1 at 74–75.) Plaintiff asked Defendant City for the following accommodation

based on her disabilities: "30 days of time to pack and assistance moving." (*Id.*) Defendant City

granted Plaintiff's request for an additional 30 days on October 31, 2024, delaying removal of her

shelter until December 2, 2024. (*Id.* at 5.) However, Defendant City did not agree to provide

Plaintiff with "any assistance packing and/or moving her belongings." (*Id.*) Thus, on November

25, 2024, Plaintiff filed a written request to engage in an interactive process with Defendant City

1  to address its "failure to honor the entirety of her original request and to further accommodate the

2  recent changes to her disability." (*Id*.)

3        Based on these facts, the court granted Plaintiff's request for a temporary restraining order

4  on November 29, 2024, finding that Plaintiff raised "serious questions" on the merits of her ADA

5  claim. (Doc. No. 4.) At that time, Defendant City had not granted Plaintiff's request for assistance

6  packing and moving her belongings. Nor had Defendant City responded to Plaintiff's request to

7  engage in an interactive process under the ADA.

8        Since then, however, Defendant City has engaged in an interactive process with Plaintiff

9  to discuss reasonable accommodations under the ADA. (*See* Doc. Nos. 28, 33.) Defendant City

10  has granted Plaintiff's request for assistance with packing and moving her belongings. (*See* Doc.

11  Nos. 12, 13, 27, 28, 30.) Defendant City has also granted Plaintiff further extensions of time,

12  totaling approximately 67 days. (*See e.g.*, Doc. No. 7 at 2, 28 at 3.) In other words, Defendant

13  City has now granted the entirety of Plaintiff's original request for reasonable accommodation

14  under the ADA. Because Defendant City has granted Plaintiff's request for reasonable

15  accommodations, the court finds Plaintiff has not raised a serious question on the merits of her

16  ADA claim.

17        2.     <u>Fourteenth Amendment: State-Created Danger</u>

18        Plaintiff also alleges her Fourteenth Amendment substantive due process rights will be

19  violated under the state-created danger doctrine if Defendant City is allowed to proceed with the

20  removal of her shelter. (Doc. Nos. 1 at 14–16; 8 at 6–9.)

21        "There is no fundamental right to housing" under substantive due process. *See Santa Cruz*

22  *Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1141 (N.D. Cal. 2021) (citing *Lindsey v.*

23  *Normet*, 405 U.S. 56 (1972)). However, the Ninth Circuit recognizes a substantive due process

24  violation under the Fourteenth Amendment where a state actor "'affirmatively place[s] an

25  individual in danger,' by acting with 'deliberate indifference to [a] known or obvious danger in

26  subjecting the plaintiff to it.'" *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006)

27  (internal citations omitted).

28        To prevail on a claim under the state-created danger doctrine, a plaintiff must show that:

1    (1) the state actor's "affirmative actions created or exposed her to an actual, particularized danger

2    that she would not otherwise have faced," (2) "the injury she suffered was foreseeable," and (3)

3    the state actor was "deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943

4    F.3d 1260, 1271 (9th Cir. 2019). First, "[i]n examining whether [a state actor] affirmatively

5    places an individual in danger, [a court does] not look solely to the agency of the individual, nor

6    [does it rest its] opinion on what options may or may not have been available to the individual.

7    Instead, [the court] examine[s] whether [the state actor] left the person in a situation that was

8    more dangerous than the one in which they found him." *Kennedy*, 439 F.3d at 1062 (citation

9    omitted). Second, foreseeability of the injury "does not mean that the exact injury must

10   be foreseeable." *Martinez*, 943 F.3d at 1273–74. "Rather, 'the state actor is liable for creating

11   the foreseeable danger of injury given the particular circumstances.'" *Id.* at 1273 (quoting

12   *Kennedy*, 439 F.3d at 1064, n.5). Third, deliberate indifference exists where the defendant

13   "disregard[s] a known or obvious consequence of [its] action." *Patel v. Kent Sch. Dist.*, 648 F.3d

14   965, 974 (9th Cir. 2011).

15          Here, the court finds there is a serious question as to whether Defendant City's affirmative

16   action in removing Plaintiff's shelter would create an actual, particularized danger to her safety

17   and welfare by exposing her to the elements and placing her in a situation that is more dangerous

18   than the one in which they found her. *See Where Do We Go Berkeley v. Cal. Dep't of Transp.*

19   *(Caltrans)*, No. 3:21-cv-04435-EMC, 2021 WL 5964594, at *11 (N.D. Cal. Dec. 16, 2021)

20   (collecting cases demonstrating that under the state-created danger doctrine, "[d]anger could

21   come from [] environmental elements"). Defendant City is aware that Plaintiff's current shelter is

22   her only protection from the elements and that it accommodates her mobility challenges

23   stemming from her disabilities, provides access to hygiene facilities, and access to life essentials

24   such as water.[9] (*See* Doc. Nos. 1 at 15, 28; 8 at 7.) Defendant City has also notified Plaintiff that

25   she cannot apply for permits to use public property, cannot rent public property, move her

26   _____

27   [9] Plaintiff further argues that as a single, elderly, disabled woman she would be "at greater danger
     of becoming a victim of violent and sexual crime if she were to lose her shelter," where she
     currently benefits from "community protection" as she maintains a good relationship with her

28   neighbors. (Doc. No. 8 at 7.)

belongings to a new location near a water fountain and bathroom, or move her belongings to an area that is street accessible for her disabilities. (Doc. No. 37 at 2–4.). Indeed, Defendant City will "not permit [Plaintiff] to move anywhere in the City" and will "not permit [Plaintiff] to camp anywhere in the City."[10] (*Id.*). Thus, there is no dispute that there is no alternative shelter, housing, or camping option currently available to Plaintiff. *See Jeremiah v. Sutter County*, No. 2:18-cv-00522-TLN-KJN, 2018 WL 1367541, *4 (E.D. Cal. Mar. 16, 2018) (finding plaintiffs demonstrated a likelihood of success on the merits of a Fourteenth Amendment state-created danger claim where they asserted that the county leaving them "without their shelters places them in a higher risk of danger because they [were] prohibited under the [applicable] [o]rdinance from using any 'form of cover or protection from the elements'").

Removing Plaintiff's shelter while knowing Plaintiff has no alternatives is likely to expose her to more dangerous conditions than she currently faces by depriving her of protection from the elements, hygiene facilities, and access to life essentials, creating a known and particularized danger to Plaintiff's safety and welfare. *See Jeremiah*, 2018 WL 1367541, *5 (finding county would knowingly place homeless individuals at increased risk of harm if it confiscated their shelter and exposed them to wind, rain, and cold weather); *San Luis Obispo Cnty. Homeless Union v. Cnty of San Luis Obispo*, No. 2:24-cv-00616-AB-MAA, 2024 WL 2107711, *1 (C.D. Cal. Mar. 29, 2024) (noting that a county's affirmative act of closing an RV parking site would render individuals homeless without shelter and pose an actual, particularized danger where the individuals had "nowhere else to go" and finding serious questions as to the county's deliberate indifference because "alternative shelter options" the county offered were "arguably impracticable, unaffordable, and/or unacceptable"); *Blain v. Cal. Dep't of Transp.*, 616 F. Supp. 3d 952, 957 (N.D. Cal. July 22, 2022) (finding "serious questions going to the merits" of a state-created danger claim where the removal of plaintiffs from an encampment "in a hurried manner

---

[10] Plaintiff suggests in her complaint that she will be forced to live out of the passenger seat of her car if her shelter is removed by Defendant City. (Doc. No. 1 at 15.) Defendant City does not contend that Plaintiff's car constitutes an alternative shelter. To the extent Plaintiff's car could be construed as an alternative shelter, Defendant City has made clear that there is nowhere in the city Plaintiff may move or camp. For example, Defendant City has not provided any locations Plaintiff would be permitted to park.

1    without adequate plans to provide housing threaten[ed] to deprive them of their only sure source

2    of shelter, safety, and the resources that come with it.").

3          Removal of Plaintiff's shelter at this time also imposes an especially increased risk in light

4    of the winter season when the temperature drops and rainfall increases. *See Sanchez v. City of*

5    *Fresno*, 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012) (city endangered its homeless residents

6    when it planned to demolish a shelter at "the onset of the winter months that would bring cold and

7    freezing temperatures, rain, and other difficult physical conditions"); *Mary's Kitchen v. City of*

8    *Orange*, No. 8:21-cv-01483-DOC-JDE, 2021 WL 6103368, at *11 (C.D. Cal. Nov. 2, 2021)

9    (noting "[c]ourts in this circuit have [] been concerned with the risks to homeless people during

10    the winter" when considering state-created danger claims).

11          Furthermore, as noted above, Plaintiff requires a cane to walk, uses a back brace, and a

12    medical boot—she cannot raise her hands over her head or bend over to retrieve items. (Doc. No.

13    1 at 23.) Plaintiff's symptoms are purportedly consistent with the disabilities she suffers from

14    including osteoarthritis and osteomyelitis in her shoulder and ankle, and degenerative disk

15    disease. (Doc. No. 29 at 2–4.) Plaintiff has presented evidence asserting she is "at an increased

16    risk of physical injury and medical decompensation" if her shelter is removed without an

17    alternative. (*Id.* at 2.) Due to Plaintiff's alleged disabilities, which impact her ability to perform

18    daily activities, she will not be able to carry necessary survival gear. (*Id.* at 4.) To the extent she is

19    forced to do so, Plaintiff asserts she "will be at greatly increased risk" of injuring herself given

20    her existing conditions. (*Id.* at 2.) In fact, Plaintiff alleges she has already injured her ankle while

21    attempting to pack her belongings. (Doc. No. 1 at 5–6.) Defendant City is and should be familiar

22    with Plaintiff's disabilities and related mobility challenges, particularly because Defendant City

23    engaged in an interactive process to determine reasonable accommodations under the ADA,

24    which is a fact-specific process. (Doc. Nos. 27, 33); *see Prado v. City of Berkeley*, No. 3:23-cv-

25    04537-EMC, 2023 WL 6307921, at *9 (N.D. Cal. Sept. 27, 2023) ("On the state-created danger

26    claim, there are serious questions as to whether the [c]ity has exhibited deliberate indifference,

27    particularly as at least some [p]laintiffs are disabled and the [c]ity's abatement could deprive

28    them of essential items of living such as bedding, tents, and RVs . . ."). Given these factual

1    allegations, there are serious questions as to the first two elements of Plaintiff's state-created

2    danger claim.

3        In addition, Plaintiff has raised serious questions as to the third element of her state-

4    created danger claim—whether Defendant City is deliberately indifferent to the known danger to

5    Plaintiff's safety and welfare should her shelter be removed. As an initial matter, Defendant City

6    has made it clear that it will not allow Plaintiff to move or camp anywhere in the City. (Doc. No.

7    33 at 2–4.) Defendant City also asserts it cannot directly connect Plaintiff with shelter or housing

8    because Defendant City does not provide shelter or housing services. However, Defendant City

9    has made conflicting representations about whether it provides shelter or housing services that

10    Plaintiff can access. For example, Defendant has three housing projects, including one that is

11    currently operating—Blue Oak Landing. (*See* Doc. No. 23 at 2.)

12        While Plaintiff has made substantial efforts to locate housing through both public and

13    private services and is actively working with homeless union members to secure alternative

14    shelter or housing, the record before the court does not demonstrate that Defendant City has made

15    a good faith effort to connect Plaintiff with housing resources. (*See e.g.*, Doc. Nos. 1 at 17; 35;

16    37.) Defendant City provided Plaintiff with information regarding CAP Solano at the court's

17    urging after Plaintiff initiated this action. Further, Defendant City agreed to reach out to CAP

18    Solano on Plaintiff's behalf only after Plaintiff requested that it do so. To date, it remains unclear

19    to the court whether Defendant City ever contacted CAP Solano regarding Plaintiff's application

20    status. Thus, Defendant City's efforts during the interactive process are not themselves enough to

21    mitigate the danger that would be created by forcing Plaintiff to leave her shelter. *See Boyd v.*

22    *City of San Rafael*, No. 3:23-cv-04085-EMC, 2023 WL 7283885, at *1 (N.D. Cal. Nov. 2, 2023)

23    ("The offer of suitable housing may constitute a sufficient effort to mitigate state-created

24    /////

25    /////

26    /////

27    /////

28

17

1   danger."), *abrogated by City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520 (2024).[11]

2   Also concerning to the court, Defendant City acknowledged it has not considered whether

3   Plaintiff is eligible for housing at Blue Oak Landing, nor is there any evidence before the court

4   suggesting that information regarding Blue Oak Landing was ever provided to Plaintiff. "Several

5   district courts in this circuit have found [state-created danger] violations based on placing

6   homeless people in danger from the elements or lack of adequate services." *Mary's Kitchen*, 2021

7   WL 6103368, at *11 (holding "[r]emoval of critical services coupled with a lack of adequate

8   alternatives supports an inference that the City has acted with deliberate indifference to the

9   danger posed" to plaintiffs); *Where Do We Go Berkeley*, 2021 WL 5964594, at *13 (denying

10  motion to dismiss state-created danger claim because a jury might find deliberate indifference

11  where "[d]efendants [were] moving forward with the closure of the encampments with

12  knowledge that available housing options may not be viable and without sufficient attempt to

13  address alternatives"); *cf. Lewis v. City of Oakland*, No. 3:24-cv-04096-SI, 2024 WL 3447513, at

14  *3–4 (N.D. Cal. July 16, 2024) (finding plaintiffs failed to show the defendant city was

15  deliberately indifferent to dangers they would face upon leaving their encampment where the city

16  also "represented that each plaintiff [had] been offered temporary shelter that accommodates their

17  disabilities to the extent possible"); *San Luis Obispo Cnty. Homeless Union v. Cnty. of San Luis*

18  *Obispo*, No. 2:24-cv-00616-AB-MAA, 2024 WL 2107723, at *2 (C.D. Cal. Apr. 24, 2024)

19  (county's effort to "assist individuals with paperwork and welfare and social services so that they

20  can relocate . . . belie[d] the suggestion of deliberate indifference"); *Cobine v. City of Eureka*, 250

21  F. Supp. 3d 423, 433 (N.D. Cal. 2017) (state-created danger claim dismissed in part because

22  record did not demonstrate "deliberate indifference of placing [p]laintiffs in an inherently more

23  dangerous situation than they had faced previously" where "encampment residents were

24  permitted to sleep in a [c]ity-owned parking lot or were offered temporary emergency shelter

25  ───────────────
    [11] The abrogation of the order in *Boyd* pertained to that plaintiff's the Eighth Amendment claim,

26  not the Fourteenth Amendment claim. *See Boyd v. City of San Rafael*, No. 23-cv-04085-EMC, 2023 WL 6960368, at *18 (N.D. Cal. Oct. 19, 2023), opinion clarified, 2023 WL 7283885 (N.D.

27  Cal. Nov. 2, 2023) (noting that Plaintiffs assert claims including violation of the Fourteenth Amendment "state-created danger" doctrine, Due Process, Americans with Disabilities Act

28  ("ADA"), and the Eighth Amendment).

1  accommodations"); *Reed v. City of Emeryville*, 568 F Supp. 3d 1029, 1039-40 (N.D. Cal. 2021)

2  (dismissing state-created danger claim where city offered plaintiffs shelter beds that were "safer

3  than an encampment abutting an active construction site").

4        Finally, the court notes that Defendant City's inaction flies in the face of Vallejo

5  Administrative Rule 7.10's stated goal to "promote a balanced approach to addressing potential

6  negative impacts of encampments, while respecting the need for shelter, safety, and community."

7  (Doc. No. 1 at 85.) Vallejo Administrative Rule 7.10 specifies that a pending notice of impending

8  removal "shall include information on shelters, storage, and other services and facilities" and "to

9  the extent feasible, specific shelter and housing alternatives will be offered to individuals prior to

10  relocation or removal of an [e]ncampment." (*Id.* at 88.) Based on the facts before the court, it

11  does not appear Defendant City has adhered to its administrative rule.

12        In conclusion, the court finds Plaintiff has raised a serious question regarding the merits of

13  her Fourteenth Amendment state-created danger claim.

14  **B.  Irreparable Harm**

15        The Ninth Circuit has held that "[a]n alleged constitutional infringement will often alone

16  constitute irreparable harm." *Associated Gen. Contractors of Cal., Inc. v. Coal. of Econ. Equity*,

17  950 F.2d 1401, 1412 (9th Cir. 1991) (citation omitted). Plaintiff has established there are serious

18  questions as to the merits of her Fourteenth Amendment claim that Defendant City's clearing of

19  her shelter would violate her substantive due process rights under the state-created danger

20  doctrine.

21        In addition, Plaintiff alleges serious risk of harm if Defendant City removes her shelter

22  because she has no alternative place to stay and cannot carry survival gear due to her disabilities.

23  (*See e.g.*, Doc. Nos. 1 at 23; 8 at 7–8; 29 at 3–4.) These harms include, but are not limited to, an

24  increased risk of exposure to the elements, especially during the winter season, aggravation of her

25  disabilities which limit mobility, risk of physical injury, exposure to sexual violence, and "a

26  credible fear [from] previously [being] victimized." *See Boyd*, 2023 WL 6960368, at *13 (finding

27  plaintiffs made a showing of irreparable harm where they faced psychological harm from

28  isolation, exacerbated drug use, enhanced risk of drug overdose, and exposure to sexual and

1    domestic violence from the "imposition of isolated camping by unhoused persons as prescribed

2    by [a] [o]rdinance"); *see also Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1041 (S.D.

3    Cal. 2022) ("[T]he threat of physical danger and harm absent injunctive relief qualifies as

4    irreparable.").

5              Accordingly, the court finds that Plaintiffs have demonstrated that irreparable harm will

6    result in the absence of injunctive relief.

7    **C.      Balancing of the Equities and Public Interest**

8              "The purpose of preliminary injunctive relief is to preserve the status quo if the balance of

9    equities so heavily favors the moving party that justice requires the court to intervene to secure

10   the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank*

11   *Nat. Ass'n,* No. 1:13-cv-1121-LJO-MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013)

12   (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "A court balancing the equities

13   will look to possible harm that could befall either party." *Jeremiah*, 2018 WL 1367541, *5 (citing

14   *CytoSport, Inc. v. Vital Pharm., Inc*., 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 F.

15   App'x 288 (9th Cir. 2009)).

16             Defendant City asserts that removing Plaintiff's shelter may hamper its "duty to maintain

17   public safety and health and enforce its laws" as Plaintiff's shelter violates Vallejo Municipal

18   Code 7.67 and Administrative Rule 7.10. (Doc. No. 7 at 7.) At the December 13, 2024 hearing,

19   Attorney Jackson also asserted Plaintiff's shelter presents health issues related to human waste

20   and Plaintiff has "damaged" the City's property by erecting a fence, facts Attorney Henson

21   contested. Finally, Defendant City asserted, through the declarations of Mr. Sanders, that

22   Plaintiff's shelter violates multiple provisions of the 2022 California Building Code.

23             The court finds that at this juncture, Defendant City has not shown there are weighty

24   public safety, health, and welfare concerns that expeditious removal of Plaintiff's shelter will

25   serve. Although Defendant City has asserted that Plaintiff's shelter presents issues related to

26   human waste and that she has damaged the City's property, Defendant City has not presented any

27   evidence in the record to this effect. Nor has Defendant City presented evidence that Plaintiff's

28   shelter is interfering with the rights or safety of others. *Cf. Prado*, 2023 WL 6307921, at *9

1   (balance of the equities tipped in city's favor where city demonstrated there were serious health

2   and safety issues at an encampment that needed to be addressed in a timely fashion, including

3   used syringes, raw sewage, rat infestations, and fire threats, as supported by the memos from the

4   environmental health division and fire department).

5        With respect to Defendant City's allegations that Plaintiff's shelter violates multiple

6   provisions of the 2022 California Building Code, the court notes that Mr. Sanders's declarations

7   were submitted well after Plaintiff's complaint was filed. (Doc. Nos. 24, 36.) In other words,

8   Defendant City did not initially notice Plaintiff's shelter for removal due to building code

9   violations. In addition, Mr. Sanders's declaration summarily states that Plaintiff's shelter violates

10  the 2022 California Building Code without providing sufficient facts to support his conclusions.

11  For example, Mr. Sanders's declaration omits critical information, such as how he examined

12  Plaintiff's shelter, whether he inspected the shelter from inside, and whether any of the violations

13  can be remedied. Nor does Defendant City explain why it has an interest in removing Plaintiffs

14  shelter at this time, as opposed to any other time. Indeed, Plaintiff resided in her current shelter

15  for over 18 months before Defendant City noticed her shelter for removal. (Doc. No. 1 at 23.)

16       In contrast, Plaintiff has demonstrated a significant interest in her own health and welfare,

17  and constitutional rights. As discussed above, Plaintiff does not have any alternative shelter,

18  housing, or camping options at this time. Defendant City has explicitly stated it will not permit

19  Plaintiff to move or camp anywhere within the City. (Doc. No. 33 at 2–4.) Plaintiff is disabled

20  with limited mobility and unable to carry survival gear. (Doc. Nos. 1 at 23; 29 at 3–4.) Moreover,

21  "[c]ourts have found there is a strong 'public interest in maintaining the protection afforded by

22  the constitution to those most in need of such protections," including unhoused individuals.

23  *Jeremiah*, 2018 WL 1367541, *5 ("[H]omeless individuals unable to afford adequate housing []

24  are persons who [are] 'most in need of [constitutional] protections.'") (citation omitted).

25  Accordingly, the court finds the balance of equities tips sharply in favor of Plaintiff and the public

26  interest is served by the issuance of an injunction.

27       In sum, the court finds Plaintiff has sufficiently established there are serious questions as

28  to her Fourteenth Amendment state-created danger claim such that she has a fair chance of

success on the merits, she faces immediate and irreparable harm in the absence of injunctive relief, the balance of equities tip sharply in her favor, and an injunction is in the public interest. Accordingly, in order to maintain the status quo and prevent irreparable harm to Plaintiff, the court will grant Plaintiff's motion for a preliminary injunction and enjoin Defendant City from removing Plaintiff's shelter at 710 Mare Island.

Given that Plaintiff's efforts in obtaining housing remain ongoing, the court will also direct the parties to promptly file a status report to inform the court of any change in circumstances regarding Plaintiff's housing status.

## CONCLUSION

For the reasons explained above:

1.    Plaintiff's motion for preliminary injunction (Doc. No. 1) is GRANTED;

2.    Defendant City is enjoined from removing Plaintiff's shelter at 710 Mare Island Way, Vallejo, California 94590; and

3.    The parties shall promptly file a status report to inform the court of any change in circumstance regarding Plaintiff's housing status.

IT IS SO ORDERED.

Dated:  **February 7, 2025**

Dena Coggins
United States District Judge

22